AMERICAN MANUFACTURERS MU-
TUAL INSURANCE COMPANY

v.

The UNITED STATES.

No. 11–71.

United States Court of Claims.

Jan. 21, 1972.

William P. Hepburn, Annapolis, Md., attorney of record for plaintiff.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, Judge, DURFEE, Senior Judge, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## ON DEFENDANT'S MOTION TO DISMISS

SKELTON, Judge.

The plaintiff, American Manufacturers Mutual Insurance Company, is an insurance company that issued a war risk insurance policy covering a ship known as the S.S. Santo Domingo. This ship was seized by rebels while in port in the City of Santo Domingo in the Dominican Republic, and, thereafter, on May 4, 1965, the rebels directed small arms and automatic weapon fire upon an element of the United States Army which had occupied parts of the city for the purpose of protecting United States Nationals. The U.S. Army returned the fire and sank the ship.

Thereafter, the owners of the ship, S. S. Santo Domingo, Flota Mercante Dominicana, C. Por A., sued the insurance company (plaintiff here) in the United States District Court for the Southern District of New York, to recover on the insurance policy for the loss of the ship. The insurance company defended the suit by claiming that the policy did not cover the loss because it contained a clause excluding from coverage claims

arising from certain acts of the United States Government, to wit: capture, seizure, arrest, restraint, detainment, preemption, confiscation, or requisition. The District Court ruled against the company on June 30, 1967, holding that none of these situations existed. Flota Mercante Dominicana, C. Por A. v. American Mfrs. Mut. Ins. Co., 272 F. Supp. 540 (S.D.N.Y.1967). *See also,* 312 F.Supp. 58 (S.D.N.Y.1970). The company settled the judgment by paying the sum of $800,000.

The insurance company has now filed this suit against the United States claiming that it is a subrogee of the owners and that the sinking of the ship was the taking of private property for public use by the United States without just compensation. The defendant filed a motion to dismiss on the grounds that the court lacks jurisdiction because the claim sounds in tort and is barred by limitations, and that there was no compensable taking of the ship by the United States, and that the company is barred from maintaining the action by reason of collateral estoppel arising out of the district court judgment mentioned above.

■ In our opinion, there was no taking of the ship by the United States either for public use or otherwise. Certainly, if the government had intended to use the ship, it would not have sunk it. Also, even if it could be argued that there was a taking because of the destruction of the vessel, it was a noncompensable taking. It is clear that the ship was destroyed in connection with the carrying on of military operations of the United States Army for the protection of its citizens in what amounted to a civil war. *See* National Board of YMCAs v. United States, 396 F.2d 467, 184 Ct.Cl. 427 (1968), aff'd, 395 U.S. 85, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969); United States v. Pacific R. R., 120 U.S. 227, 78 S.Ct. 490, 30 L.Ed. 634 (1887); United States v. Caltex, Inc., 344 U.S.

149, 73 S.Ct. 200, 97 L.Ed. 157 (1952); Perrin v. United States, 4 Ct.Cl. 543 (1868), aff'd, 79 U.S. (12 Wall.) 315, 20 L.Ed. 412 (1870); and Franco-Italian Packing Co. v. United States, 128 F. Supp. 408, 130 Ct.Cl. 736 (1955). In other words, the vessel was destroyed as a part of the fortunes of war and by actual and necessary military operations in attacking and defending against enemy forces. Accordingly, there was no compensable taking of the property.

Furthermore, the government is not liable, in the absence of legislation, for the injury to and destruction of the ship when it acted to defend itself and its citizens from the destructive actions of a rioting mob. *See* Westminster Investing Corp. v. G. C. Murphy Co., 140 U.S. App.D.C. 247, 434 F.2d 521 (1970) and the cases cited therein. In that case, Judge Davis, speaking for the court said: [1]

> * * * No reported case holds a governmental body liable in these circumstances, or indicates that there could be liability without a statute or ordinance. All the statements by courts are the other way. [*Id.* at 523.]

This statement is true regardless of how deserving of relief the injured party may be. In this connection, the court in that case quoted from the opinion of Mr. Justice Harlan, in National Board of YMCAs v. United States, 395 U.S. 85, 96, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969) as follows:

> * * * [O]ur decision today does not in any way suggest that the victims of civil disturbances are undeserving of relief. But it is for the Congress [or other legislative body], not this Court, to decide the extent to which those injured in the riot should be compensated, regardless of the extent to which the police or military attempted to protect the particular property which each individual owns. [434 F.2d at 525.]

1. Judge Oscar H. Davis, a Judge of the United States Court of Claims, sat as a judge in that case by designation pursuant to Title 28, U.S.Code, Section 293(a).

If the plaintiff has any claim at all, it appears to be one sounding in tort of which this court does not have jurisdiction. It will not serve any purpose to transfer the case to a district court, because both the Tort Claims Act and the Suits in Admiralty Act have two year statutes of limitation (28 U.S.C. § 2401 and 46 U.S.C. § 745). The plaintiff's cause of action accrued not later than May 5, 1965.

Because of the views we hold on the other issues in this case, as expressed above, we do not reach the question of collateral estoppel.

Accordingly, the defendant's motion to dismiss is granted and the plaintiff's petition is dismissed.